Okay, the next argued case is number 16, 15, 12, Kennedy against the United States, whenever you're ready, Mr. Kennedy. Good morning, your honors. May it please the court. My name is Jason Kennedy and I'm the plaintiff appellant in this case. I respectfully ask for the federal until it is lawfully terminated pursuant to statute or regulation. In this case, since the plaintiff was never regularly disenrolled nor his scholarship otherwise terminated, this court should reverse the court of federal claims and direct judgment for the plaintiff awarding the scholarship, the subsistence allowance, and the cost of litigation. I'd like to make three points before the court today. First, once a scholarship is awarded, a midshipman's status in the NRTC program is determined through a singular administrative process, which begins before the performance review board and culminates in the secretary's executive decision. That process includes consideration of re-enrollment in officer candidate school, possibly transferring to the potential financial penalties which the secretary wishes to impose. Let's assume that we were to agree with you that you had a right to appear before the PRB, that you were effectively denied the right to appear before the PRB, and that there was a possibility that the secretary of the Navy advised by the PRB would let you, let's say, re-enroll. But suppose there were a determination that the PRB would not have changed its mind if you appeared before it. Then why isn't the failure to effectively allow you to appear before the PRB harmless error? Allow me to ask a point of clarification to Your Honor's question. Whom would make the determination that the PRB's recommendation would not have been different? Well, what I'm hypothesizing is that, let's say there were a remand here, there would be a determination that that would be the case. If there were such a determination that the result would not have been different, then why should you be able to collect anything? All right. The answer lies in the legal doctrine governing when harmless error is applicable to military personnel decisions. This court should hold that when the military is making a subjective assessment, a subjective assessment of one individual's capacity for military service, the integrity of that assessment is necessarily defined by the process through which the assessment is made. When the process is fundamentally flawed in a way that undermines the structural fairness of the assessment itself, the integrity of the assessment is destroyed. Because the judiciary would be incapable of replicating that merits-based assessment, whether a service member is fit for military service, the harmless error inquiry becomes non-justiciable, and the inability of the government to meet their burden on their defense does not defeat the plaintiff's claim. Mr. Kennedy, let me get down to the nitty-gritty if I can a little bit here. As you can tell from our request for additional briefing, we're concerned about the question of whether or not you would have an opportunity to return to OCS. As I read the rules and regulations, at least, if you were barred from returning to OCS permanently and by finally by the secretary, then you would be unable to show that you could succeed with your NROTC program, and you would be disenrolled. That's the way I look at it. So that's why we were looking at the question of the return to OCS. You hang your hat on, and the question was, who has the authority, the final authority, to decide who gets to attend OCS? You hang your hat on the Secretary SAVCNET ENST 153312G Section 305A, right? 315A. Pardon me, 315A, where it says SECNAV makes the final decision. The government responded by saying, oh, no, no, that section doesn't apply to you because that section only applies to students that are obligated to active service, right? You didn't counteract, you didn't object to that interpretation in your supplemental reply brief. I want to have some factual assertion. The Secretary seemed to think you had incurred an obligation to active service. Yes, Your Honor. And so it's your view that you were obligated to active service, and therefore, you fall within 315A, correct? Absolutely, Your Honor. Yes. So when the government says, oh, no, it doesn't apply because it only applies to people that are obligated, they're making a nonsensical argument. A factually erroneous argument, Your Honor. Yes. And I'm sorry, I had not interpreted the Department of Justice's brief to assert that 315A was inapplicable for non-obligated status. In this case, when the plaintiff was awarded his three-year ROTC scholarship contract, he entered into an obligated status. The statutes and regulations have a few different procedures. Well, it doesn't work so that you're obligated in the service, and if you ended up not succeeding at OCS, you could be, they could send you into the regular down to Parris Island as a Marine Corps private, right? Correct, Your Honor. Yes. And that was your obligation to service. Correct, Your Honor. Yes. And to accept a commission if offered. And then I believe, isn't it true that if you agreed to pay back the tuition that had been paid, then you no longer were obligated to the service? Potentially, yes, Your Honor. And that's how that system works. I the statutory scheme in section 2005 as codified prior to 2006, the secretary had the option to order a midshipman to active duty enlisted status, and indeed required enlistment in the reserves as a condition of receiving the scholarship on the front end, or had the option of ordering reimbursement of the scholarship. Those are the two alternatives available to the secretary. In the context of the reimbursement provisions, the scholarship is forfeited. In the context of being ordered to active duty- But in your case, reimbursement was eventually waived, was it not? Yes, Your Honor, by the secretary acting through the board for correction of naval records. But if the secretary chooses the second option of ordering active duty enlisted service, the midshipman is entitled to keep his scholarship. There's no diminution of the In the factual context of this case, to your question, Judge Clevenger, the final determination of whether or not the plaintiff, as an obligated midshipman, was to be made by the secretary of the Navy because his review was requisite to changing the plaintiff's status in the NRTC financial assistance program. That review by the secretary is not limited by his subordinates' recommendations. That's the point that I made in my letter- What I was trying to get at is to say, well, in these circumstances, if you want to make the showing that had you attended the PRB, you would have stated your case for being able to go back to OCS and have another trial. Yes, Your Honor, or to transfer to the Navy option. That's right. And because it's your view that the ultimate decision as to your disenrollment connected to that lies with the secretary of the Navy, not with somebody out, the commanding officer at Quantico. Yes. So that's why we asked for this briefing. And you are relying on the 315A for the secretary making the final decision. We'll hear from the government later on. But Judge Dyke, I believe, was asking was, well, let's assume that we send this case back. We say that the notion that you could not possibly have achieved any greater relief at the PRB was wrong. You might have. Then when it goes back, can there be a harmless error inquiry? That is to say, a hearing where the government would say, well, I know we're about ready to go back to the PRB, but it is unnecessary because, perchance, the secretary has never overruled the commandant at Quantico or for whatever reason. I think that was the thrust of his argument. Let's assume that you went back to the PRB, right, and the PRB heard your case but said, no, thank you, we are not going to recommend you go back to Quantico. Do you have relief after that? Can you go up the chain of command and seek to get access to the secretary to reverse the recommendation of the PRB? I don't believe there's any current mechanism that would provide for such a secondary post hoc review in this case. Just as in Wagner v. US, there is no body that can authoritative decision as to what would have been because the secretary had unbridled discretion, the words used in Wagner, unbridled discretion, as to how he would have addressed the plaintiff's status on the first end. In Wagner, not even the secretary himself was able to make a determination post hoc to try and remedy the violation. That doesn't help you because the secretary could have used the unbridled discretion to rule against you. We don't know how he would have ruled. As the court did not know in Wagner as well, yes, your honor. So I don't know that you know the answer to that, but I mean, in this setting, frequently after the fact PRBs or after the fact promotion boards are established all the time to re-review a record that was found to have procedural error. What I was trying to get at is if it goes back to a do-over at the PRB, assuming that you get past a harmless error inquiry, or does it, you have, you would argue, I think, for example, if the PRB ruled in your favor and said we recommend you to go back, would recommend you go back to OCS, you know that the military is going to take that up the chain of command, correct? I would assume so, your honor. So my only question is whether or not the cadet has any right to push up the chain of command from an adverse decision at the PRB. Yes, your honor. The regulations penned by the Department of the Navy require the Navy itself to push it up the chain of command to the secretary for his ultimate decision. It is only his decision that can affect the plaintiff status in the scholarship program. I'd like to make an observation as a matter of law in response to this line of query. There is a difference between the plaintiff's ability to prove the sufficient nexus between the procedural error and the adverse action taken against him. And that's different from the government's ability to prove harmless error to defeat a promulgation case that has already been established. In the former context, it is incumbent upon the plaintiff to show in some sense that the result might have been different, that there was some form of prejudice. And in this case, that prejudice was found by the board for correction of naval records. A different inquiry applies in the context of harmless error as we are in in this case. It and the test is fundamentally different. Under Texas v. LaSange, the harmless error inquiry requires that the government prove what would have been. In the prima facie case, the plaintiff is only required to show that there is a sufficient nexus or relationship between the procedural error and the adverse personnel action as it was found in this case by the board for correction of naval records. I'd like to make another observation regarding the BCNR's determinations in this case. It refused to award relief to the plaintiff upon its determination that the facts in the case indicate that disenrollment was authorized, was permitted under the regulations. That finding by the board for correction of naval records does not address the inquiry as to either the nexus nor as to harmless error as this court recognized in Lindsay v. US. There, this court said that a determination that adverse personnel action is permissive does not constitute a judgment regarding fitness or retention in the military service. So there has been no such determination and under the regulatory scheme as it exists, there's no mechanism for making that determination now. The special selection boards that this court considered in Porter v. US does not apply to midshipmen. It applies to officers, whether an officer should be promoted. So the secretary cannot send this case back to a special selection board to decide whether the plaintiff would have been promoted. Indeed, promotion is not the relevant inquiry. So I'm not sure that I'm following that. Why is it that we couldn't send it back to the Court of Federal Claims to order the convening of a PRB and go through the process again? Because the PRB process is a unique process to deliberate the midshipmen at that point in time. These are the officers who are closest to the plaintiff's performance in the NRGC program. They were the ones who evaluated his status. They're no longer at the NRGC unit. The regulations require the plaintiff's ability to appear before the PRB to be heard. So that can't be recreated? That cannot be recreated, Your Honor, no. And I see that my time has expired. Then it has. We'll save you some rebuttal time and let's hear from the government. Thank you, Your Honor. I appreciate it. Mr. Grimaldi? Good morning, Your Honors. You have an immediate response to that problem of whether or not a PRB could be convened on remand? I think our answer is a little more complicated with that, but directly, can this, and this is something the board could look at below, Your Honor, the Board for Correction of Military Records for the Navy, excuse me, the BCNR, Board for Correction of Naval Records. The case is not in front of the BCNR. The case is right in front of the Court of Federal Claims now, and the Court of Federal Claims ruled that what I will say is the failure of Mr. Kennedy to be able to have attended his PRB was a due process error, but was harmless because the PRB could not have given him any more relief than he got. That's what the Court of Federal Claims said. That's correct. So we have in front of us a harmless due process violation for purposes of argument. We have conceded that there's a due process violation here, Your Honor, because this was before the board. What is the remedy? The remedy in a promotion case would be to create a promotion board and go back and send it through again, right? The remedy is exactly what the Court of Federal Claims did when we sought a voluntary remand in this case would be to send it back to the board. Excuse me. It wasn't sending it back. I'm saying that wrong. What the court did on our motion was send it to the board for the first time. It's been there, and in front of the BCNR, Mr. Kennedy argued that he should not have been barred from going back to OCS. He made his complete range of arguments that he made to the Court of Federal Claims. He made to the BCNR. I would completely disagree with that, Your Honor. He did not make all the same claims at the board that he did at the Court of Federal Claims. There was wrongful withholding claims that were brought up for the first time at the Court of Federal Claims. Are you suggesting that the proper relief would be assuming that we felt that the harmless error decision by the Court of Federal Claims was wrong? Yes. Right? Then we should send it back to them with orders to them to send it back to the BCNR? That is correct, Your Honor. To do what? To correct Mr. Rekers, to evaluate whether Mr. Well, first off, Your Honor, let me back up and step here. This determination has already been made by this BCNR on pages 38 and 40 of the Administrative Record. Mr. Kennedy's briefing only focuses on page 39, on the page where the Court of Federal Claims... 38, that's... Yes. Before we get there, can I just ask one point? This is Mr. Kennedy in terms of who has the final authority to invite you out to OCS. Sure. And you say, well, it's the commanding officer at OCS. And he says, no, the Secretary of the Navy has the final decision. Yes, Your Honor. And he cites 315A. Right, Your Honor. And your response saying 315A doesn't apply to him? That is actually, that was our second comment, Your Honor. I'm looking at page seven of your reply brief, your second brief. Yes, Your Honor, and I'll quote directly from page seven. The only regulation that Mr. Kennedy identifies, CNET Institute... Just don't go so fast. Oh, sorry, Your Honor. You said that it didn't apply because it only applies to people that are obligated to active service, 315A. I say that on page eight. Yeah, that was your reason why 315... No, Your Honor. Well, it was our secondary reason. Our first reason on page seven is... Is your secondary reason incorrect? Well, we read that... Is he obligated to active service, yes or no? Your Honor... Are you familiar with the Secretary's action in this case? A1162 in the record. Mr. Kennedy has incurred an obligation for active enlisted service. Oh, well, yes. Based upon that, it would appear that our sentence is wrong in our briefing, Your Honor. That's correct. 100% wrong. That sentence is wrong. And you knew that? No. You were unaware of 1162 when you filed your reply brief. I apologize, Your Honor. Did you mislead us on purpose? I'm sorry, Your Honor. Did you mislead us on purpose? Of course not, Your Honor. Then why did you mount the... Do you agree that 315A gives the Secretary an able final decision here? Yes or no? Yes or no? No. Why? Because if the question is whether or not... The question that we were asked... And I certainly will admit that that sentence, as you have shown me right now, is wrong. I was unaware of it, Your Honor, as we only had a couple days to write this document while also... Are you the one that signed? I'm sorry? Did you sign this piece of paper that was sent to us? Yes, Your Honor. I apologize, Your Honor, but truly based upon the fact that Mr. Kennedy... They had already recommended him... You can appreciate this is all very technical stuff. Right. Mr. Kennedy has a due process violation that you have conceded. The question is, what do we do about it? Right, Your Honor. And he's arguing that he thinks that if he went back to the PRB, if there was such a thing, and he pitched his case, he could convince them, or up the chain of command, he could convince right up to the Secretary that he should have been given an opportunity to go back to OCS. That is correct. And do you now tell me that he could not do that? The Secretary of the Navy has... I want to be very clear about our harmless error argument here. I want to be very clear about your delegation argument to the COO at Quantico. But I want to start from the beginning here. The Secretary overruled the COO at Quantico on admission to Quantico, yes or no? Well, I would imagine that the Marines would... Yes or no? Yes. Yes, he can. So Mr. Kennedy's argument has merit that if he went back to the PRB and was able to convince them that he should go back to OCS and they sent it up the chain of command, then his disenrollment would have been incorrect. Yes. Good. Absolutely. But to go back to 315 here, Your Honor... Did you realize what our problem was in this case? Well, we addressed that in our brief here, Your Honor. We believe that the Secretary has discretion... So let's go back to where we were before. We've now established that Mr. Kennedy has made a showing that you do not rebut that if he had gone to the PRB, he might have been able to make his argument and move forward with his request to go back to OCS. And that that decision could have gone all the way up to the Secretary for either approval or rejection either way. You've agreed to that? Yes, Your Honor. Absolutely. But in our brief... That much agreed, then the Court of Federal Claims' decision that it would have been unnecessary to go to a PRB because nothing more could have been done, that decision is incorrect by the Court of Federal Claims. On the record, we have. Your Honor, we actually argued that the Court of Federal Claims never should have made that decision. Well, fine. In our brief, yes. Assume that, fine. They made the decision and that's the decision we are reviewing today. So that decision is wrong. You've just admitted it. What do we do? Well, Your Honor, we believe that because the Secretary has delegated this to the Marine Corps, the decision on behalf of the Marine Corps officers regarding Mr. Kennedy that he is not allowed back is a decision of the Secretary. If we... Where is final? You just admitted to me that the final decision rests with the Secretary and that if Mr. Kennedy was successful through the PRB, up the chain of command, the Secretary would sign a piece of paper saying he should have been able to go back to OCS. Boom. His disenrollment was incorrect. Boom. Right. That's what would happen, right? Right. So, Your Honor, you're trying to tell me that somehow the CO at Commandant made a final decision that the Secretary couldn't overrule. No, he could have overruled it, but he acted on behalf of the Secretary when doing this training. The Secretary doesn't control... You haven't really shown me anywhere the delegation down to the CO. No, Your Honor. To the Marine Corps we have, yes. I don't understand. You keep taking contradictory positions. I thought you told Judge Clevenger that the Secretary and the PRB could overrule the decision not to let him re-enroll, that they had that authority and that it was a due process violation for him not to be able to appear before the PRB. I thought those things were clear. Yes, Your Honor. But our position, including in our brief, has been consistent that what happened here is that we did recognize a due process violation. The United States recognized that, sought settlement, that didn't work out, and then sought a voluntary remand. Over Mr. Kennedy's objections, the court did remand this matter to the Board for Correction of Naval Records. At that point, the Navy reviewed Mr. Kennedy's arguments, including his arguments that his record should be corrected to say that he should be retained in OCS, and found on pages 38 and 40, Your Honors, that, to quote, the CO of the NROTC unit was justified in disenrolling Petitioner based on Petitioner's failure to complete the required OCS training and the declaration that he was not invited to return. Therefore, even though the Board recommended a waiver of recruitment of advanced education benefits received by Petitioner, it does not recommend any monetary relief beyond a waiver of the debt. In the following paragraph, the Board discusses what Mr. Kennedy's contention that his condition was temporary as opposed to permanent, and finds that it was in the discretion. All right, but the BCNR said they saw the due process problem, and they said the PRB could have granted him more relief than it gave him. Absolutely, Your Honor, page 38. What more could they have given him? The PRB gave him a waiver of his recoupment requirement. That's correct. So what else could the PRB have given him? His senior year of tuition, Your Honor. Right. So on pages 38 and 40 of the Board, we have a harmless error determination finding that in this situation, it was not unjustified to remove Mr. Kennedy from the disenrollment despite his due process. The PRB gave him that. The PRB didn't give him his senior year. Okay, fine. Yeah, excuse me, the BCNR, Your Honor. Yes, right, right. And just to be clear- What do you want us to do now? Let's assume we take your concession there was a due process violation. We take your concession that if he'd been in front of the PRB, he could have argued for re-enrollment, and that the PRB and the secretary could have reversed the decision of the commanding officer. Okay, what are we supposed to do now? Before I mention that, Your Honor, can I just mention the section 315 that we were discussing earlier? And I will certainly answer that question, Your Honor. Section 315 demonstrates not- Now, why don't you try to answer the question, and then you can go on to the- Okay, thank you, Your Honor. If the court finds that the BCNR's decision on pages 38 and 40 of the record are insufficient to be a harmless error determination that the court should have reviewed, that a remand to the court of federal claims to then remand back to the BCNR to explicitly look at this issue with any of the comments that Your Honors have found this analysis to be insufficient and to review it at that point. And that board is capable of correcting- I'm trying to think this through. So the BCNR could have said that he gets tuition for senior year. Yes. Right? And the BCNR has already said that he didn't have to pay back tuition for his junior year. And he's recouped. He's now gotten back what he already paid back. I'm not sure if he's received the check, Your Honor, but it's been ordered. Nobody's contesting that. And then that would leave open the question of the sophomore fall term of the sophomore year, which is still in the air. Yes, the board could consider that as well. Yes. So the board has authority. As the board explains on pages 38 and 40, it has authority to award these costs, these tuition. It just found that awarding- But it has authority to recommend to the secretary. Oh, of course. And the secretary, as you can see on page 41. Yeah, the secretary has twice engaged himself in this case. Correct. You know, once on the disenrollment and then with the recoupment and then with the reversal of the recoupment. Right. Yes, Your Honor. And that brings me exactly to 315, Your Honors. When drafting this, we did want to make the point that 315, and that is- Apologize, Your Honors. I'm just going to pull that up right now. It's appendix page 1512 and 1513. On 1512, you can see that it's termination of appointment. This section is addressing the secretary's authority over terminating the NRTC appointment, not OCS training. Of course, the secretary is in charge of the Navy and the Marine Corps overall and all personnel and training. It is our position that to say that the secretary delegates cannot make a decision regarding a training class would eliminate harmful error overall for military pay cases because no matter what happens, who along the chain of command makes the decision, the secretary always has the authority to overrule that. In that case, there could never be any harmless error. So that is our position as to why the Marine Corps had final authority over Mr. Kennedy's enrollment in OCS. But you agreed they didn't have the final authority. Why do you keep saying that? Well, it was delegated to them, Your Honor. You corrected your mistake, and now you keep reintroducing it. I don't understand that. Well, I guess, Your Honor, I'm just trying to make the distinction between- I guess the distinction I'm trying to make is the secretary certainly has final authority over all parts of the Marines and Navy, but he's delegated certain decisions such as training classes to Marine officers in this instance and- Where is that specific delegation? Did you show us that in your documents? I couldn't see anything. It was really very clear in terms- There is no regulation, Your Honor. I'll be very clear that there's no regulation aimed at a specific Marine officer that is in charge and whether or not an individual is eligible for a Marine Corps officer- Yes, training school. Now, when reading 315, Your Honors, we apologize regarding that statement. You have shown us that we are wrong and with no intent to mislead, but we do believe that in order to preserve a harmless error doctrine in military pay cases, decisions made by delegates of the Secretary of Navy, we've shown that the Marine Corps has been delegated training over the Marine option students, the NCRT. That's an interesting way to create a delegation. Ordinarily, delegation requires to be very specific and you don't infer it in the existence of a legal doctrine. Well, Your Honor, this is a situation we're talking about a training class here. We're not talking about NRTC, which is a program that entitles one to money. We're not talking about promotion. We're talking about this is specifically a training class. I mean, it's practical training, but it's certainly no different than any of the other classes. I mean, this particular type of training happens to be quite important because as Mr. Kennedy realizes, if he can't show entitlement to go back to OCS, he's disenrolled good for sure because you cannot possibly succeed in this program if you fall into the OCS. That's correct, Your Honor. But in the same sense, one of the naval science classes that Mr. Kennedy was enrolled in, if he had received an F grade in that class, is the secretary required to review that grade because we could require him to fail out of that class? Might it not determine the circumstances under which he got the F? I'm sorry, Your Honor. Might it not determine the circumstances under which he got the F? If he got the F because he was African American, wouldn't that make a difference? Would harmless error bar him from being able to make that argument? The answer is no. Right. So you don't need to save the harmless error doctrine in order to be able to assure that you're never going to challenge these lower-level decisions. Well, regardless, Your Honor, my final point, because I believe I'm over here, is that the harmless error decisions were made on pages 38 and 40 of the record. So further remand would be unnecessary here because we did seek voluntary remand for this exact question, and it was answered. Thank you, Your Honors. Any more questions for the government? Go ahead. Can I ask a question? Yes. There's been all of this citation to the CNET Instruction 1533-12G. Yes, Your Honor. And nobody ever told us the provenance of that. Has that regulation come down from the Secretary? It's issued by the Chief of Naval Education and Training. It cites as his authority DOD Directive 1215-8. Yes, Your Honor. Does that come from on high? Again, I think we're following a chain of things down. It does come from that DOD instruction, and then it is instructions issued by the Chief of Naval Education and Training. So it's not issued by the Secretary's office. It is issued by the CNET, the Chief of Naval Education and Training Office, under the authority of that DOD section. Right. For example, when that regulation says CNET has been delegated authority to process and direct disenrollments, so long as the cases don't involve obligation for active service or recoupment, that's in 3015-D. Right. Does that mean that the CNET can kick anybody out of the NROTC program so long as it isn't somebody who is obligated to service or to involve recoupment? Yes, Your Honor. That's an utter delegation down from the Secretary someplace else, so that so long as you're not dealing with either obligation to service or recoupment, they have the end authority. That's correct. But in this case, with regard to recoupment, the Secretary has retained ultimate authority. That is correct. So that would not... That's over in... D would not apply to Mr. Henry. That's in 14-L, right? 314-L. SACNAB may order obligated, make them pay back. Yes. That's where... So all recoupment cases will end up on the Secretary's desk for... As they did here. Well, the Assistant Secretary signs in footnote two of our brief. We note that the Assistant Secretary for the Navy is the... been delegated. And a disenrollment of somebody who's obligated to active service, such as Mr. Kennedy was, that's going to end up on the Secretary's desk as well. Yes. So either Mr. Kennedy's looking at this or our original erroneous looking at this, the Secretary of the Navy makes the final decision on whether Mr. Kennedy belongs in the NROTC. We absolutely do believe that. It's the Marine Corps OCS where we argue that the Marine Corps has a final... I apologize for getting a little agitated, sir, but I spent all day yesterday not watching the Ryder Cup and not watching the Redskins, but reading all the rules and regulations so I could become prepared. I apologize. And Mr. Kennedy and I... Accidental slip up on your part. Right. I must confess, dialed my heat up a little bit. I apologize for ruining the Ryder Cup for you. Like mutual promises, mutual apologies. Yes. Made and accepted. Thank you. Thank you, sir. And thank you very much, Your Honors. Thank you, Mr. Grimaldi. Mr. Kennedy, you have your rebuttal time. Thank you, Your Honors, for the rebuttal time. A few observations I'd like to make in response to the Department of Justice. First, if there is to be a remand in order to ascertain what would have happened, I respectfully submit that current regulations will control that remand decision. As I noted in my letter brief to this court, current regulations from the Commandant of the Marine Corps... Mr. Kennedy, you've given us the regulations  which presumes that the Marine Corps applied going forward, and whether or not those regulations are going to be debate if there is a B.C. Honor hearing. It's a matter for them to decide, not us. I'll take that for what it's worth, Your Honor. Yes. What do the regulations provide? The regulation provides that if someone is disenrolled from Officer Candidate School for medical reasons, he will be allowed to re-enroll in Officer Candidate School. It further provides... I understand. Yes. Thank you, Your Honor. Second, the Department of Justice is trying to divorce the decision of whether to allow a midshipman to retain his status in the NRDC scholarship program from the question of whether he should be permitted to enroll in Officer Candidate School. There's no basis in law for that divorce. As Mr. Grimaldi conceded before this court, the secretary's discretion in what to do with the plaintiff status is broad and unbridled. That includes re-enrollment in Officer Candidate School. And your argument, presumably, is that the... in response to the government is that the BCNR might have made some type of a harmless error decision if they did in their decision, but it wasn't the one that they would make if this case were sent back to them? In this case, the BCNR has already determined, Your Honors, that disenrollment from the NRDC scholarship program was not mandatory before the Performance Review Board. Does that answer your question, Judge Clothier? Yeah, well, they clearly said more relief could be granted. One question. I just wanted to make one observation, if I could, and I've talked with a panel of this, and this is to the government as well. I mean, this is the kind of case that cries out for the parties reasonably to sit down and talk about settlement. The... it's perfectly clear that there's a problem here. It's perfectly clear that it's going to take time and money of everybody to try to sort this out. We're not talking about huge sums of money here. The kind of relief that BCNR could grant is within the realm of the parties to discuss. And so the panel was going to withhold its decision on this case for 30 days, in which time you should report back to us as to whether you had some discussions, and if so, whether they look like they'll bear fruit, and if you need more time for discussion to tell us specifically what you're talking about. Does that make sense to the government? We'll just hold off for 30 days and see if there's something rather than... that you all can work out? Absolutely, Your Honors. Thank you. Thank you, Your Honors, for that opportunity. If the panel has no other questions, I believe I've made my argument. Okay, good. All right, then we'll wait to hear from both of you within 30 days. Thank you, Your Honors. Okay, the case is taken under submission. All rise. Okay. The honorable court is adjourned until tomorrow morning at 10. Great, Captain.